living, he could not for that reason have contradicted. They might have been done without his authority or knowledge, as were some of the other acts of the plaintiff, and did not necessarily involve a personal transaction with him."

The learned counsel for the executor also contends that the saloon business was hers. The evidence, however, does not warrant us in reaching that conclusion. The respondent proved, by the brewers and dealers who supplied the saloon with liquors, that the bills were charged to him and paid by him, and that the saloon licenses were issued to him. The executor, upon the trial, gave no proof that the testatrix furnished the money to pay any of these claims or demands, and it will not do to assume that the respondent might have paid them with her money. Such an assumption is clearly overcome by the fact that she was obliged to give a note for the balance due on the building contract, and from her statement that she did not have the money to pay the bills when they were presented to her, and directing the parties to see her husband. The fact that he paid the bills with his own money was substantially proved by her own acts and admissions. The testimony is sufficient, in our judgment, to sustain the findings of the referee.

The judgment, therefore, should be affirmed, with costs against the appellant to be paid out of the estate. All concur.

Judgment affirmed.

---

(89 Hun, 284.)

PEOPLE ex rel. CRISCOLLA v. ADAMS, Treasurer of Kings County.

PEOPLE ex rel. JOHNSON v. SAME.

(Supreme Court, General Term, Second Department. July 26, 1895.)

1. INTERPRETER—POWER TO APPOINT—KINGS COUNTY.
    Laws 1869, c. 249, authorizes the board of supervisors of Kings county to appoint an interpreter for the courts of record in that county. Code Civ. Proc. § 94, authorizes said board to appoint an interpreter for the courts of record, except the county court. *Held* that authority was given to appoint only two interpreters, one under the act of 1869 and the other under Code Civ. Proc. § 94.

2. SAME—POWER TO REMOVE.
    Under Laws 1869, c. 249, authorizing the appointment of an interpreter with a salary payable "during good behavior," the interpreter cannot be removed without cause. Brown, P. J., dissenting.

3. SAME—APPOINTMENT—REFERENCE TO STATUTE.
    An interpreter appointed under Laws 1869, c. 249, authorizing the appointment of one person, died after the enactment of Code Civ. Proc. § 94, providing for the appointment of an additional interpreter, and another person was appointed in his place. The second appointee resigned, and a third was appointed to fill the vacancy caused by such resignation. *Held*, that the last appointment was made under the act of 1869, though the resolution making the appointment referred to Code Civ. Proc. § 94.

Appeal from special term, Kings county.

Applications by Lorenzo Criscolla and Andrew P. Johnson, respectively, for writs of mandamus to compel Henry H. Adams, as treasurer of the county of Kings, to restore the names of relators to the pay roll of said county, and to pay them arrears of salary alleged to be due. The application of relator Criscolla was granted, and de-

fendant appeals; and the application of relator Johnson was denied, and said relator Johnson appeals.     Affirmed.

The opinion of Mr. Justice BARTLETT at special term is as follows:

On January 28, 1895, the board of supervisors adopted a resolution declaring that John Jacobson was thereby appointed Scandinavian interpreter in the courts of record of Kings county, in place of Andrew P. Johnson, thereby removed, and that Louis Perry was thereby appointed Italian interpreter in such courts in place of L. Criscolla, likewise thereby removed. It is not pretended that either of these removals was for misconduct. Interpreters appointed by the board of supervisors are entitled to hold office during good behavior. Laws 1869, c. 249; Code Civ. Proc. § 94. Messrs. Johnson and Criscolla, claiming that their removal in this manner was illegal and void, have instituted the present proceeding to compel the county treasurer to pay them their salaries just as though the resolution of January 28, 1895, had never been passed.

The main ground of opposition to the application is the proposition that, under existing laws, the supervisors have the right to appoint only one interpreter for the courts of record in Kings county; that they have exercised that right in appointing Frank Mann, the German interpreter now in office; and hence that, the appointments of Messrs. Johnson and Criscolla being invalid as in excess of the powers of the board of supervisors, the county treasurer should not be directed or allowed to pay their salaries. This objection makes it necessary to determine what legislation is now in force in respect to the appointment of interpreter by the supervisors of this county, and what are the powers of the board thereunder.

Chapter 249 of the Laws of 1869 provides as follows: "The board of supervisors of the county of Kings are authorized and empowered to designate and appoint some suitable person as interpreter, whose duty it shall be to attend the courts of record in said county, at which witnesses are sworn and testify, and who shall be paid the sum of twelve hundred dollars per annum, during the good behavior of the said interpreter." I am not able to discover that this act has ever been repealed. The learned counsel for the relators declares that it has not been repealed, and in this assertion he is sustained by Mr. Birdseye's Chronological Table of New York Statutes. I do not think it was repealed by implication by the enactment of section 94 of the Code of Civil Procedure, as there is no necessary repugnancy, and that section is to be regarded simply as conferring authority to appoint a second interpreter. It reads as follows: "The board of supervisors of the county of Kings may appoint an interpreter to attend the terms of the courts of record, except the county court held in that county, at which issues of fact are triable, who shall hold his office during good behavior." It is contended in behalf of the relators that this provision of the Code authorizes the appointment of more than one interpreter, and I am informed that such has been the construction put upon it by the board. I cannot concur in that interpretation. It is difficult for me to perceive how language could be used which would make it clearer that the appointment of one officer, and only one, was contemplated by the enactment of this particular section. The act of 1869, as already shown, had previously provided for the appointment of one; and my conclusion is that, under that statute and the Code, the extent of the power of the supervisors in this matter is the appointment of two interpreters,—one, by virtue of chapter 249 of the Laws of 1869; the other, by virtue of section 94 of the Code of Civil Procedure.

The papers before me make it plain that Mr. Mann, the German interpreter, holds his office under the act of 1869, though the resolution appointing him refers to section 94 of the Code. The first appointee under that statute was John Smith, April 27, 1869. He died, and Bernard Midas was appointed in his place on November 11, 1886. Mr. Midas resigned; and on December 12, 1889, Frank Mann was appointed expressly to fill the vacancy caused by his resignation. It appears to be equally clear that the first appointment, and the only one which can be regarded as having been made under section 94 of the Code, was that of Mr. Criscolla, who was appointed interpreter of

Italian, French, and Spanish on June 14, 1883. The averment in his affidavit that he has at all times behaved himself properly while holding the said office of interpreter is not denied. The resolution of the board of supervisors, assuming to remove him without cause, was therefore wholly nugatory, and cannot deprive him of the right to his compensation.

The case of Mr. Johnson is different. At the time when the board attempted to appoint him, in 1892, Mr. Mann and Mr. Criscolla were in office. If the view which I entertain is correct, the board could not then lawfully appoint a third interpreter. Hence his appointment was invalid, and the court cannot command the county treasurer to make any further payment to him. Indeed, any such payment to him, or to any other persons claiming to be interpreters by virtue of an appointment by the supervisors, except Messrs. Mann and Criscolla, would seem to be without any authority in the law as it now stands.

Application in behalf of the relator Criscolla granted. Application in behalf of the relator Johnson denied. No costs.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

J. Edward Swanstrom, for relators.
George F. Elliott, for defendant.

PER CURIAM. Order affirmed, on opinion of BARTLETT, J., at special term.

BROWN, P. J., dissented in the Criscolla case.

---

(90 Hun, 114.)

HAY et al. v. JACKELE et al.

(Supreme Court, General Term, Fifth Department. October 16, 1895.)

1. NEGOTIABLE INSTRUMENTS—BONA FIDE HOLDERS.
   Where a person takes a note before maturity, and pays full value therefor, and there is no evidence of actual notice or bad faith on the part of such person, and no suspicious circumstances as to his bona fides in the purchase of the note, it is sufficient to sustain a finding as matter of law that he is a bona fide holder of the note.

2. SAME—ACCOMMODATION PAPER—DIVERSION.
   Where a note is given for the accommodation of the payee, to enable him to get the money at a particular bank, and he procures it to be discounted at another bank, it is not a diversion of the note.

Appeal from circuit court, Erie county.

Action by Thomas A. H. Hay and William O. Hay, as survivor of Jacob Hay, deceased, against Jacob Jackele and others on a promissory note. From a judgment entered on a verdict in favor of plaintiffs for $678.78, defendants appeal. Affirmed.

Argued before LEWIS, BRADLEY, WARD, and DAVY, JJ.

Myron H. Clark, for appellants.
Henry B. Loveland, for respondents.

DAVY, J. This action was brought upon a promissory note dated June 5, 1891, made by the defendant Jackele, to the order of A. C. Briggs, for $550, payable two months after date at the American Exchange Bank, Buffalo, N. Y. The note was indorsed by the defendants A. C. Briggs and J. H. Buck, and delivered to the plaintiffs